SCHOTT, Chief Judge.
Plaintiff, Louis Dreyfus Corporation,[1] brought this action for damages against *679 defendant, Continental Grain Company, based upon a contract between the parties. The contract obliged Continental to provide grain elevator services to Dreyfus at Continental’s Westwego, Louisiana facility from April, 1971 until October, 1978. These services consisted in unloading barges of grain owned by Dreyfus and loading like quantities and qualities of grain on ships provided by Dreyfus. The elevator consisted of numerous storage silos for grain with a complex network of buckets moving on belts throughout the facility.
On December 22, 1977 a tragic explosion occurred at the elevator destroying the facility and causing the loss of the lives of many of Continental’s employees and others at the facility. The contract between the parties contained a “Force Majeure” clause which provided, in pertinent part, as follows:
“A party shall not be liable for nonperformance or delay in performance due in whole or in a part to any cause either not within its control or which it could not by reasonable diligence have avoided.”
Dreyfus’ claim for damages is based on allegations that the explosion was Continental’s fault and that Continental’s inability to perform grain elevation services for the price set out in the contract caused a loss for Dreyfus which was forced to pay higher prices for the services at other grain elevators.
The case was tried to a commissioner of the Civil District Court and his report and recommended judgment dismissing Dreyfus’ suit were adopted by the trial judge. The report which is extensive and contains a summary of the evidence produced at trial concludes that Dreyfus failed to establish fault on Continental’s part even with the application of the doctrine of res ipsa loquitur to the facts. The report of the commissioner is made part of this opinion by reference.
In this Court Dreyfus relies so heavily on the doctrine of res ipsa loquitur that we begin with a discussion of the doctrine. Our task is relatively simple because the meaning and effect of res ipsa loquitur in Louisiana was clearly and completely set forth by the Supreme Court in the landmark case of Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972). From the opinion these principles emerge: 1) Res ipsa is a rule of circumstantial evidence whereby defendant’s negligence is inferred because the facts indicate such negligence to be the more probable cause of injury in the absence of another as-plausible explanation by credible witnesses. 2) The rule does not dispense the plaintiff from proving negligence by a preponderance of the evidence, but it is a step in the process of plaintiff’s proof which permits him in a proper case to place in the scales an inference of defendant’s negligence along with proof of the accident and sufficient circumstances to supply the inference. 3) The real test of applying res ipsa is whether the facts suggest the defendant’s negligence, rather than other factors, as the most plausible explanation of the accident. 4) Res ipsa is defeated if an inference that the accident was due to a cause other than defendant’s negligence could be drawn as reasonably as one due to his negligence. 5) Res ipsa is “simply another formulation” of plaintiff’s burden in a tort action to prove more probably than not that his injury was caused by defendant’s negligence. 264 So.2d at 636.
Considering the foregoing principles we initially reject plaintiff’s argument based on Moak v. Link-Belt Company, 229 So.2d 395, 407 (La.App. 4th Cir.1970) that because “something went wrong” and since the grain elevator was in the exclusive control of Continental we should infer that Continental’s negligence caused the damage, regardless of what instrumentality within the plant caused the explosion. This discussion in the Moak case was simply dicta but was nonetheless overruled in part by the Boudreaux case.
Dreyfus’ burden of proof was heavier than that of a plaintiff who attempts to invoke the doctrine of res ipsa in a tort case. This is not a tort case but an action in contract between two sophisticated parties who anticipated the possibility that the contract might be disrupted and agreed precisely on what Dreyfus had to prove in *680 the event this occurred. The force maj-eure clause quoted above insulates Continental from liability to Dreyfus if the explosion was wholly or partially due to a cause not under Continental’s control or one which Continental could not have avoided by reasonable diligence. Under these terms Dreyfus was entitled to recover only if the cause of the explosion was wholly within Continental’s control or wholly one which Continental could not have avoided by reasonable diligence; but Dreyfus was not entitled to recover even if the cause of the explosion was partially within Continental’s control or in part could have been avoided by the reasonable diligence of Continental.
When Dreyfus’s proof is measured against this contractual burden of proof the evidence is far short of supporting its claim. However, even assuming that Dreyfus is entitled to rely on the doctrine of res ipsa loquitur, as in a tort action, the conclusions of the trial court are not clearly wrong.
Dreyfus established that grain dust suspended in air throughout the elevator was the fuel for the explosion. While offering lay testimony that the dust was especially heavy just before the explosion and that Continental’s dust evacuation system was either not functioning properly or was inadequate, this evidence was not so compelling to warrant a finding on the appellate level that Continental was derelict in its precautions against excessive dust. In the first place, the credibility of Dreyfus’ lay witnesses and the weight to be given to the opinions of its expert, Frank Weaver, were for the trial court to resolve, and the trial court rejected much of this testimony. Second, grain dust in a grain elevator is a problem which cannot be completely solved despite the exercise of reasonable diligence on the part of the operator. And third, the evidence firmly established that Continental did exercise reasonable diligence to avoid the problem of excessive dust.
However, Dreyfus contends that the presence of the dust would not have caused the explosion except for an ignition source and that the evidence was sufficient to supply the inference that Continental’s negligence caused the ignition of the dust. This evidence consisted of the expert testimony of Frank Weaver and some vague unsubstantiated testimony of some lay witnesses. Based upon some scorch marks on the cover of the belt going from the barges to the elevator Weaver theorized that this belt had caught on fire because of friction and when the burning section passed over one of the silos containing grain and dust a piece of the burning rubber fell into the silo igniting the dust. However, Continental’s plant superintendent testified that this belt wasn’t even running before the accident and this testimony was corroborated by an interpretation of some photographs made by a Continental executive, Max Spencer. These two witnesses offered convincing testimony that the belt caught on fire after the explosion, fell back due to the force of gravity, and burned inside the covering causing the scorch marks. The trial court’s resolution of this conflicting testimony in Continental’s favor is not manifestly erroneous.
Dreyfus also produced some testimony to support the possibility that ignition was supplied by defective bearings under the belts or by friction between moving buckets and stationary housings because of misalignment of the buckets. This testimony concerned isolated instances remote in time to the explosion and it was countered with Continental’s evidence that the belts, bearings, buckets, and other components of this vast, complex system were constantly being monitored and maintained. From our review of this voluminous record we are not at all persuaded that the trial court erred in concluding that Dreyfus’ evidence did not support an inference of negligence on the part of Continental that sparked the explosion.
Finally, Dreyfus sought to prove that the interventing between silos constituted a substandard design and allowed the explosion to spread throughout the facility instead of being confined to a single silo. Continental effectively countered with evidence that the interventing design was acceptable under the construction standards in effect when the facility was constructed and that the explosion would have spread even without the vents.
*681 In large measure the outcome of this case depended upon the testimony of the conflicting experts, Weaver for Dreyfus and Spencer for Continental. Spencer’s qualifications were impressive and his testimony was highly persuasive. While we recognize that he was a Continental executive who could be considered biased, this is a credibility and weight factor for the trial court to consider. The trial court was apparently impressed by his testimony as are we. His testimony established that an explosion is universally regarded as a known hazard in a grain elevator, that the West-wego elevator was equipped with the finest and most modern safeguards, and that its management took every precaution to guard against an explosion and to train its employees to do so. Furthermore, the evidence established that such an explosion can occur despite the exercise of reasonable diligence. Spencer implied this, and even Weaver admitted that the possibility of an explosion in a grain elevator cannot be eliminated, only minimized.
It was Dreyfus’ burden to prove that Continental could have avoided the explosion by the exercise of reasonable diligence. Having failed to carry this burden, its case was correctly dismissed by the trial court.
AFFIRMED.
PLOTKIN, J., concurs with the result.

. Joining as parties plaintiff are a number of subrogated insurance underwriters who paid Dreyfus the major portion of its claim pursuant to policies of business interruption insurance.